# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CATHOLIC YOUTH SUMMER CAMP, INC.**, <br> 7550 Ramey Road <br> Centerburg, OH 43011, <br><br> *Plaintiff*, <br><br> v. <br><br> **HILLIAR TOWNSHIP, OHIO,** <br> 5120 Columbus Road <br> Centerburg, Ohio, 43011, <br><br> **BOARD OF TRUSTEES FOR HILLIAR TOWNSHIP, OHIO** <br> 5120 Columbus Road <br> Centerburg, Ohio, 43011, <br><br> **COLBY CLIPPINGER, in his official capacity as Hilliar Township Zoning Inspector,** <br> 3900 Gilbert Road <br> Centerburg, Ohio, 43011, <br><br> **MARK MCCANN, in his official capacity as the Fire Chief for the Central Ohio Joint Fire District,** <br> 5138 Columbus Road <br> Centerburg, Ohio 43011, <br><br> *Defendants*. | **Case No. _____** <br><br> **Judge _____** |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DAMAGES, AND ATTORNEYS' FEES

Plaintiff Catholic Youth Summer Camp, Inc., d/b/a Damascus Catholic Youth Summer Camp ("Damascus") by and through its undersigned counsel, and for its Verified Complaint against Defendants Hilliar Township, Ohio (the "Township" or "Hilliar"), the Board of Trustees

for Hilliar Township, Ohio (the "Board"), Colby Clippinger, in his official capacity as Hilliar Township Zoning Inspector (the "Zoning Inspector" or "Clippinger") and Mark McCann, in his official capacity as Chief of the Central Ohio Joint Fire District (the "Fire Chief") (collectively, "Defendants"), aver and allege as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. This Court has general personal jurisdiction over all of the Defendants.

3. Venue in this Court is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff Catholic Youth Summer Camp, Inc., d/b/a Damascus Catholic Youth Summer Camp, is an Ohio non-profit corporation with its principal place of business located at 7550 Ramey Road, Centerburg, Ohio 43011.

5. Defendant Hilliar Township, Ohio, is a township located in Knox County, Ohio.

6. Defendant Board of Trustees for Hilliar Township, Ohio is the legislative body that governs the Township and is responsible for establishing local laws, setting policy, approving programs, and generally overseeing the Township's operations.

7. Defendant Colby Clippinger is the Hilliar Township Zoning Inspector, and upon information and belief, resides in Knox County, Ohio.

8. Defendant Mark McCann is the Chief of the Central Ohio Joint Fire District and, upon information and belief, resides in Knox County, Ohio.

## FACTS COMMON TO ALL CLAIMS

A. **Damascus Obtained a Conditional Use Permit to Operate Its Catholic Youth Summer Camp and Related Religious Programming.**

9. Damascus began its mission in 2001, providing the Central Ohio community with a faith-awakening camp for Catholic youth as well as ministry retreats. Damascus was founded in response to a need expressed by parents seeking an environment for their children that was rooted within the Catholic tradition – a joy-filled environment that would challenge young people to live the adventure of their Catholic faith.

10. In furtherance of its mission, Damascus identified its ideal site located at 3 Township Road 200, Centerburg, Ohio 43011 (the "Property"). The Property is large – consisting of approximately 471 acres – which would allow Damascus to serve as a year-round camp, retreat, and conference center for Catholic missionaries of all ages.

11. The Property is zoned as a Rural Conservation District ("RC District"), which expressly allows "Permitted uses," such as agriculture, one family detached dwellings, fish and game hatcheries, and residential subdivisions.

12. However, the Township's Zoning Resolution inexplicably designated "Churches and Other Places for Religious Worship" as "Conditionally Permitted Uses."

13. Damascus entered into a contract to purchase the Property with the former owner, Jamie Feick, contingent upon Damascus obtaining a conditional use permit to operate its year-round camp and retreat center.

14. Thereafter, Mr. Feick and Damascus applied for a Conditional Zoning Certificate with the Hilliar Township Board of Zoning Appeals ("BZA"), which would grant Damascus a conditional use permit to operate its faith-based services (the "Conditional Use Permit").

15. The BZA held a hearing on the application on March 16, 2015. At the meeting, Damascus' Executive Director, Aaron Richards, explained Damascus' planned day-to-day operations, including that Damascus planned to have hundreds of campers per week. In addition to summer camp, Richards explained, Damascus' operations include other year-round religious programming.

16. Several neighbors attended to ask questions, but no one in attendance had any objections to the Conditional Use Permit.

17. As such, the BZA granted the Conditional Use Permit for Damascus' "operations" **with no conditions**. Put another way, Damascus has the right to use its entire 471-acre Property for its faith-based operations without any restrictions on the time of year, the number of campers or retreat attendees, or the number of structures located on the Property.

18. On March 30, 2015, Damascus purchased the Property from Mr. Feick.

**B. For Several Years, Damascus Constructed Additional Structures on the Property, Receiving Zoning and Building Approvals as a Matter of Course Pursuant to the Conditional Use Permit.**

19. Damascus officially began hosting campers at the Property in the summer of 2016. Within months after opening, Damascus hosted thousands of persons through dozens of retreats, and served a variety of vibrant Catholic ministries.

20. In 2016, facilities that were estimated to meet demand for three years of growth were filled within the first three months of opening registration. Thus, in 2017, Damascus expanded to add retreat centers that increased camp capacity and enabled retreat groups to be more effectively served year-round.

21. Each time that Damascus applied to build a structure on its Property, Damascus would visit the Zoning Inspector in person to request a permit. The Zoning Inspector granted the permit each time as a matter of course.

22. Because the Conditional Use Permit contains no conditions or restrictions upon Damascus' use, the additional facilities are entirely consistent with – and expressly permitted by – the Conditional Use Permit.

**C. Faced with Anti-Catholic Sentiment, the Township Attempts to Block Damascus' Full Use of Its Property.**

23. Sadly, in recent years, a vocal minority of Township citizens have expressed anti-Catholic sentiments towards Damascus.

24. Upon information and belief, faced with these same or similar anti-Catholic sentiments from certain members of the community, Defendants began to manufacture arbitrary zoning and building obstacles to prevent Damascus from using its Property in accordance with the Conditional Use Permit.

25. For example, in February 2023, Damascus started planning the installation of ten (10) prefabricated, one-season cottages (the "Cottages") to prepare for occupancy during the summer of 2023. The Cottages are fully consistent with the Conditional Use Permit.

26. Damascus kept the Township well apprised of its plans. In fact, after requesting a permit to install the Cottages in early March 2023 (the "Application"), Clippinger made a trip to the Property to evaluate the site where the Cottages would be located. Because all 471 acres of the Property were approved for Damascus' religious operations in 2015, Damascus had a legitimate expectation that the Application would be approved as a matter of course.

27. Inexplicably, however, on March 15, 2023, Clippinger called Damascus, stating that Township Trustee Jason Rogers would not allow Clippinger to issue the permit. Clippinger stated that the Township believed the Cottages were beyond the scope of the Conditional Use Permit. However, the Township refused to reduce its arbitrary decision to writing, leaving

Damascus with no ability to file any administrative appeal.  Nevertheless, the Township denied the Application.

28. On March 21, 2023, Damascus, through its counsel, wrote a letter to the Township through its counsel stating that the prohibition by Trustee Jason Rogers was arbitrary and in direct violation of Damascus' existing Conditional Use Permit and its property rights under both state and federal law.  Consistent with these rights, Damascus also informed the Township that it would be installing the Cottages pursuant to the Conditional Use Permit.  A true and accurate copy of the March 21, 2023 letter is attached hereto as **Exhibit A**.

29. Neither the Township nor its counsel responded or otherwise contacted Damascus concerning the Cottages for many weeks.

30. With the summer season fast approaching and hearing nothing from the Township, Damascus installed the Cottages on the Property consistent with the Conditional Use Permit.  By the beginning of May 2023, all of the Cottages were in place.

> **D. After the Cottages Were Installed, the Township Demanded That Damascus Cease and Desist Nonexistent Construction.**

31. On May 2, 2023, the Township issued a cease and desist letter (the "Cease and Desist Letter") signed by Clippinger.  Upon information and belief, the Cease and Desist Letter was issued at the direction of Trustee Jason Rogers as an unlawful attempt – nearly eight years later – to limit the scope of Damascus' Conditional Use Permit.

32. In the Cease and Desist Letter, Clippinger erroneously stated that the installation of the Cottages violated Section 14.01 of the Township's Zoning Resolution because it allegedly, "exceeds the Conditional Use granted by the Board of Zoning Appeals."

33. However, Section 14.01 of the Zoning Resolution states that "[n]o person shall build or remodel any structure . . . or change the use of the land within Hilliar Township without first obtaining a . . . **Conditional Zoning Certificate**." (emphasis added).

34. Damascus had already obtained a "Conditional Zoning Certificate" (otherwise known as the Conditional Use Permit) in 2015 for the operation of its year-round retreat. *See* Zoning Resolution § 6.01. Accordingly, Damascus had not violated Section 14.01 by installing Cottages to aid in carrying out the very purpose for which the Conditional Use Permit was granted.

35. The Cease and Desist Letter further stated, "You are hereby ordered to cease and desist construction activity until a new Conditional Use Certificate is granted by the BZA."

36. However, by the time the Township sent the Cease and Desist Letter, Damascus had already installed the Cottages. Therefore, no "construction" took place after the Damascus received the Cease and Desist Letter. In short, the Cease and Desist Letter was moot upon arrival.

**E.     Thereafter, the Fire Chief Instructed the District Fire Inspector to Refuse to Inspect or Permit the Cottages.**

37. On May 23, 2023, an inspector from the Central Ohio Joint Fire District ("COJFD") was on the Property for a scheduled test of a hydrant system.

38. Damascus requested that the inspector come back on Thursday, May 25, 2023, for a 15-minute, perfunctory inspection the Cottages. The inspector replied "I'll have to talk to the Chief," referring to Fire Chief McCann.

39. Later that day, the inspector spoke to Damascus and indicated that the COJFD would not offer the inspection due to the Township's erroneous Cease and Desist Letter.

40. In other words, Fire Chief McCann declined to perform a required public service – the basic inspection – due to the Township's violations of Damascus' rights. Upon information

and belief, Defendants are refusing to allow the inspection in an effort to block Damascus from obtaining a Certificate of Occupancy from the Ohio Department of Commerce.

    **F.    Damascus and Its Campers Will Be Irreparably Harmed By Defendants' Actions.**

    41.    Damascus' summer-retreat season begins in June 2023. Damascus must have the premises ready prior to the arrival of its first campers on June 11, 2023.

    42.    The Cottages are planned for occupancy by campers that have paid and reserved spots in these buildings.

    43.    If the Cottages are not available for occupancy, approximately 63 campers per week that have paid and reserved spots at camp will be displaced and refused attendance at the camp.

    44.    It is estimated that the Defendants' actions will displace about 567 campers for the summer.

    45.    Due to Defendants' actions, Damascus will be forced to turn away campers, incurring substantial monetary damages and reputational harm.

    46.    Most importantly, as a result of Defendants' actions, Damascus and these campers will lose the opportunity to practice their Catholic faith together this summer.

    47.    If Defendants continue to prevent Damascus from using the Property pursuant to the Conditional Use Permit, Damascus and its campers will be prohibited from engaging in its protected religious activities and thus irreparably harmed.

    48.    Damascus may need to seek emergency relief from the Court to prohibit Defendants from taking actions that interfere with Damascus' full use of the Property consistent with the Conditional Use Permit. At this time, Damascus is attempting to resolve these issues extra-judicially.

## COUNT ONE

**(Violation of The Religious Land Use and Institutionalized Persons Act's ("RLUIPA") "Substantial Burden" Provision, 42 U.S.C. § 2000cc(a), Against All Defendants)**

49. Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Complaint as if fully set forth herein.

50. On March 16, 2015, the Township granted Damascus the Conditional Use Permit without conditions to operate its year-round Catholic camp and retreat center on the Property.

51. Damascus' intended use of the Property as "a year-round Catholic retreat and conference center with a community of full-time missionaries providing an environment of encounter for thousands of people of all ages," constitutes "religious exercise," as that phrase is used in 42 U.S.C. § 2000cc(a)(1).

52. Defendants, through their actions described above, have prevented Damascus from using the Property in furtherance of its religious mission and exercise, which has substantially burdened Damascus' religious exercise in violation of 42 U.S.C. § 2000cc(a)(1).

53. Defendants have, therefore, violated 42 U.S.C. § 2000cc(a)(1), causing Damascus to suffer both irreparable harm and monetary damages.

## COUNT TWO

**(Violation of RLUIPA'S "Equal Terms" Provision, 42 U.S.C. § 2000cc(b)(1), Against the Township, the Board, and the Zoning Inspector)**

54. Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Complaint as if fully set forth herein.

55. Within the RC District, "Churches and Other Places for Religious Worship" – *i.e.* religious assemblies and institutions – are required to apply for and to obtain conditional use permits before they are permitted to locate and operate within the district.

56. In contrast, nonreligious assemblies and institutions, including "Agriculture," "One family detached dwelling units," "Fish and game hatcheries," and "Minor subdivisions involving two (2) or more one family dwelling units," are deemed "Permitted Uses" and are allowed to locate and operate within the RC District as of right.

57. The Zoning Resolution, both on its face and as applied by the Township, the Board, and the Zoning Inspector, treats Damascus, a religious assembly and institution, on less than equal terms with the nonreligious assemblies and/or institutions within the RC District.

58. Defendants have, therefore, violated 42 U.S.C. § 2000cc(b)(1), causing Damascus to suffer both irreparable harm and monetary damages.

## COUNT THREE

**(42 U.S.C. § 1983 Deprivation of Damascus' Property and Liberty Interests without Substantive Due Process of Law in Violation of the Fourteenth Amendment to the United States Constitution Against All Defendants)**

59. Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Complaint as if fully set forth herein.

60. Defendants have deprived Damascus of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

61. Damascus' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

62. Damascus has constitutionally protected property and liberty interests in relation to the Property, including, but not limited to:

    a. The right to use the Property consistent with the Conditional Use Permit;

    b.   The right to use the Property in furtherance of its religious mission and exercise; and

    c.   The right to be free from arbitrary and capricious zoning decisions relating to the Property.

63.    The Township's denial of Damascus' Application is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

64.    The Township's issuance of the Cease and Desist Letter is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

65.    The Fire Chief's refusal to permit inspection of the Cottages is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

66.    Accordingly, Damascus has suffered, and will continue to suffer, the deprivation of its vested rights under the United States Constitution.

## COUNT FOUR

**(Declaratory Judgment)**

67.    Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Complaint as if fully set forth herein.

68.    Damascus is entitled to a declaratory judgment that Damascus is free to operate its religious camp and retreat as a permitted use of the Property.

69.    Damascus is entitled to a declaratory judgment that the Conditional Use Permit allows Damascus to operate year-round religious programming on the Property.

70. Damascus is entitled to a declaratory judgment that Damascus' intended use of the Property, including but not limited to Damascus' use of the Cottages, is consistent with and permitted by the Conditional Use Permit.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in consideration of the foregoing, Damascus seeks:

A. Compensatory damages;

B. A preliminary and permanent injunction to enjoin Defendants from taking any action that prohibits Damascus from using its Property pursuant to the Conditional Use Permit;

C. A declaratory judgment that Damascus is free to operate its religious camp and retreat as a permitted use of the Property;

D. A declaratory judgment that the Conditional Use Permit allows Damascus to operate year-round religious programming on the Property;

E. A declaratory judgment that Damascus' intended use of the Property, including but not limited to Damascus' use of the Cottages, is consistent with and permitted by the Conditional Use Permit.

F. Pre- and post- judgment interest;

G. Attorneys' fees and costs;

H. Any other declarative, injunctive, or other equitable relief this Court deems just and appropriate.

Respectfully submitted,

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463), Trial Attorney
Elizabeth S. Alexander (0096401)
Jordan C. Patterson (101174)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
P/F: (614) 464-6233
jrmiller@vorys.com
esalexander@vorys.com
jcpatterson@vorys.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

          Respectfully submitted,

          */s/ Joseph R. Miller*
          Joseph R. Miller (0068463), Trial Attorney
          Elizabeth S. Alexander (0096401)
          Jordan C. Patterson (101174)
          VORYS, SATER, SEYMOUR AND PEASE LLP
          52 East Gay Street, P.O. Box 1008
          Columbus, Ohio 43216-1008
          P/F:  (614) 464-6233
          jrmiller@vorys.com
          esalexander@vorys.com
          jcpatterson@vorys.com

          *Counsel for Plaintiff*

## VERIFICATION

I, Aaron Richards, certify that I am the Executive Director of Operations and Finance of Catholic Youth Summer Camp, Inc. *d/b/a* Damascus Catholic Youth Summer Camp ("Damascus").  I am authorized to make this verification on behalf of Damascus.  I certify that I have reviewed the foregoing Complaint.  The facts and statements set forth therein are true to the best of my knowledge, information and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this __26__ day of May, 2023 in Columbus, Ohio.

_____
Aaron Richards

# EXHIBIT A



52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | vorys.com

Founded 1909

**Joseph R. Miller**
Direct Dial (614) 464-6233
Direct Fax (614) 719-4630
Email jrmiller@vorys.com

March 21, 2023

<u>VIA E-MAIL</u>

Chip McConville
Knox County Prosecutor
117 E. High Street, Ste. 234
Mount Vernon, OH 43050
chipmcconville@co.knox.oh.us

      Re:    Damascus Catholic Youth Summer Camp

Dear Chip:

      As we have been discussing, Damascus Catholic Youth Summer Camp ("Damascus") is planning to install ten (10) one-season buildings for its Catholic youth summer camp and related religious programming. Damascus's plan to do so is fully consistent with its existing conditional use permit previously issued by Hilliar Township. Damascus has kept the Township fully informed of its plans for several months now. As you and I have discussed, these buildings are planned for occupancy this summer. Campers have already reserved and paid for spots in these buildings.

      Last week, Damascus Executive Director Aaron Richards was told by Township Zoning Inspector Colby Clippinger that Township Trustee Jason Rogers does not want to allow installation of those buildings. I understand that to be contrary to your legal advice. As you know, any such instruction by Township Trustee Rogers is completely arbitrary and in violation of Damascus's existing conditional use permit, its property rights under law, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. Section 2000cc, <u>et</u> <u>seq.</u> Trustee Rogers should understand that he subjects both the Township and himself personally to potential liability under law if he continues to take such reckless and unlawful action. In the meantime, I have advised Damascus to act, and it will act, in accordance with its existing rights under its conditional use permit and federal law in installing these buildings.



Chip McConville
Knox County Prosecutor
March 21, 2023
Page 2

                                                                              Very truly yours,

                                                                              Joseph R. Miller

JRM/nmd