# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **CATHOLIC YOUTH SUMMER CAMP, INC.,** | : | |
| 7550 Ramey Road | : | |
| Centerburg, OH 43011, | : | **Case No. 2:23-cv-1781** |
| | : | |
| *Plaintiff,* | : | |
| | : | **Judge James L. Graham** |
| v. | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **HILLIAR TOWNSHIP, OHIO,** | | |
| 5120 Columbus Road | | |
| Centerburg, Ohio, 43011, | | |
| | | |
| **BOARD OF TRUSTEES FOR HILLIAR TOWNSHIP, OHIO** | : | |
| 5120 Columbus Road | : | |
| Centerburg, Ohio, 43011, | : | |
| | : | |
| **COLBY CLIPPINGER, in his official capacity as Hilliar Township Zoning Inspector,** | | |
| 3900 Gilbert Road | | |
| Centerburg, Ohio, 43011, | | |
| | | |
| **MARK MCCANN, in his official capacity as the Fire Chief for the Central Ohio Joint Fire District,** | | |
| 5138 Columbus Road | | |
| Centerburg, Ohio 43011, | | |
| | | |
| *Defendants.* | | |

## FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, DAMAGES, AND ATTORNEYS' FEES

Plaintiff Catholic Youth Summer Camp, Inc., d/b/a Damascus Catholic Youth Summer

Camp ("Damascus") by and through its undersigned counsel, and for its First Amended Complaint

("Amended Complaint") against Defendants Hilliar Township,  Ohio (the "Township" or

"Hilliar"), the Board of Trustees for Hilliar Township, Ohio (the "Board"), Colby Clippinger, in his official capacity as Hilliar Township Zoning Inspector (the "Zoning Inspector" or "Clippinger") and Mark McCann, in his official capacity as Chief of the Central Ohio Joint Fire District (the "Fire Chief") (collectively, "Defendants"), aver and allege as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. This Court has general personal jurisdiction over all of the Defendants.

3. Venue in this Court is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff Catholic Youth Summer Camp, Inc., d/b/a Damascus Catholic Youth Summer Camp, is an Ohio non-profit corporation with its principal place of business located at 7550 Ramey Road, Centerburg, Ohio 43011.

5. Defendant Hilliar Township, Ohio, is a township located in Knox County, Ohio.

6. Defendant Board of Trustees for Hilliar Township, Ohio is the legislative body that governs the Township and is responsible for establishing local laws, setting policy, approving programs, and generally overseeing the Township's operations.

7. Defendant Colby Clippinger is the Hilliar Township Zoning Inspector, and upon information and belief, resides in Knox County, Ohio.

8. Defendant Mark McCann is the Chief of the Central Ohio Joint Fire District and, upon information and belief, resides in Knox County, Ohio.

## FACTS COMMON TO ALL CLAIMS

**A.      Damascus Obtains a Conditional Use Permit to Operate Its Catholic Youth Summer Camp and Related Religious Programming.**

9.      Damascus began its mission in 2001, providing the Central Ohio community with a faith-awakening camp for Catholic youth as well as ministry retreats. Damascus was founded in response to a need expressed by parents seeking an environment for their children that was rooted within the Catholic tradition – a joy-filled environment that would challenge young people to live the adventure of their Catholic faith.

10.      In furtherance of its mission, Damascus identified its ideal site located at 3 Township Road 200, Centerburg, Ohio 43011 (the "Property"). The Property is large – consisting of approximately 471 acres – which would allow Damascus to serve as a year-round camp, retreat, and conference center for Catholic missionaries of all ages.

11.      The Property is zoned as a Rural Conservation District ("RC District"), which expressly allows "Permitted uses," such as agriculture, one family detached dwellings, fish and game hatcheries, and residential subdivisions.

12.      However, the Township's Zoning Resolution inexplicably designated "Churches and Other Places for Religious Worship" as "Conditionally Permitted Uses."

13.      Damascus entered into a contract to purchase the Property with the former owner, Jamie Feick, contingent upon Damascus obtaining a conditional use permit to operate its year-round camp and retreat center.

14.      Thereafter, Mr. Feick and Damascus applied for a Conditional Zoning Certificate with the Hilliar Township Board of Zoning Appeals ("BZA"), which would grant Damascus a conditional use permit to operate its faith-based services (the "Conditional Use Permit").

15.     The BZA held a hearing on the application on March 16, 2015.  At the meeting, Damascus' Executive Director, Aaron Richards, explained Damascus' planned day-to-day operations, including that Damascus planned to have hundreds of campers per week.  In addition to summer camp, Richards explained, Damascus' operations include other year-round religious programming.

16.     Several neighbors attended to ask questions, but no one in attendance had any objections to the Conditional Use Permit.

17.     As such, the BZA granted the Conditional Use Permit for Damascus' "operations" **with no conditions**.  Put another way, Damascus has the right to use its entire 471-acre Property for its faith-based operations without any restrictions on the time of year, the number of campers or retreat attendees, or the number of structures located on the Property.

18.     On March 30, 2015, Damascus purchased the Property from Mr. Feick.

**B.      For Several Years, Damascus Constructed Additional Structures on the Property, Receiving Zoning and Building Approvals as a Matter of Course Pursuant to the Conditional Use Permit.**

19.     Damascus officially began hosting campers at the Property in the summer of 2016. Within months after opening, Damascus hosted thousands of persons through dozens of retreats, and served a variety of vibrant Catholic ministries.

20.     In 2016, facilities that were estimated to meet demand for three years of growth were filled within the first three months of opening registration.   Thus, in 2017, Damascus expanded to add retreat centers that increased camp capacity and enabled retreat groups to be more effectively served year-round.

21.     Each time that Damascus applied to build a structure on its Property, Damascus would visit the Zoning Inspector in person to request a permit.  The Zoning Inspector granted the permit each time as a matter of course.

22.     Because the Conditional Use Permit contains no conditions or restrictions upon Damascus' use, the additional facilities are entirely consistent with – and expressly permitted by – the Conditional Use Permit.

**C.     Faced with Anti-Catholic Sentiment, the Township Attempts to Block Damascus' Full Use of Its Property.**

23.     Sadly, in recent years, a vocal minority of Township citizens have expressed anti-Catholic sentiments towards Damascus.

24.     Upon information and belief, faced with these same or similar anti-Catholic sentiments from certain members of the community, Defendants began to manufacture arbitrary zoning and building obstacles to prevent Damascus from using its Property in accordance with the Conditional Use Permit.

25.     For example, in February 2023, Damascus started planning the installation of ten (10) prefabricated, one-season cottages (the "Cottages") to prepare for occupancy during the summer of 2023. The Cottages are fully consistent with the Conditional Use Permit.

26.     Damascus kept the Township well apprised of its plans. In fact, after requesting a permit to install the Cottages in early March 2023 (the "First Application"), Clippinger made a trip to the Property to evaluate the site where the Cottages would be located. Because all 471 acres of the Property were approved for Damascus' religious operations in 2015, Damascus had a legitimate expectation that the First Application would be approved as a matter of course.

27.     Inexplicably, however, on March 15, 2023, Clippinger called Damascus, stating that Township Trustee Jason Rogers would not allow Clippinger to issue the permit.  Clippinger stated that the Township believed the Cottages were beyond the scope of the Conditional Use Permit.   However, the Township refused to reduce its arbitrary decision to writing, leaving

Damascus with no ability to file any administrative appeal.  Nevertheless, the Township denied the First Application.

28.     On March 21, 2023, Damascus, through its counsel, wrote a letter to the Township, through its counsel, stating that the prohibition by Trustee Jason Rogers was arbitrary and in direct violation of Damascus' existing Conditional Use Permit and its property rights under both state and federal law. Consistent with these rights, Damascus also informed the Township that it would be installing the Cottages pursuant to the Conditional Use Permit. A true and accurate copy of the March 21, 2023 letter is attached hereto as **Exhibit B**.

29.     Neither the Township nor its counsel responded or otherwise contacted Damascus concerning the Cottages for many weeks.

30.     With the summer season fast approaching and hearing nothing from the Township, Damascus installed the Cottages on the Property consistent with the Conditional Use Permit.  By the beginning of May 2023, all of the Cottages were in place.

**D.     After the Cottages Were Installed, the Township Demands That Damascus Cease and Desist Nonexistent Construction.**

31.     On May 2, 2023, the Township issued a cease and desist letter (the "Cease and Desist Letter") signed by Clippinger.  Upon information and belief, the Cease and Desist Letter was issued at the direction of Trustee Jason Rogers as an unlawful attempt – nearly eight years later – to limit the scope of Damascus' Conditional Use Permit.

32.     In the Cease and Desist Letter, Clippinger erroneously stated that the installation of the Cottages violated Section 14.01 of the Township's Zoning Resolution because it allegedly, "exceeds the Conditional Use granted by the Board of Zoning Appeals."

33.     However, Section 14.01 of the Zoning Resolution states that "[n]o person shall build or remodel any structure . . . or change the use of the land within Hilliar Township without first obtaining a . . . **_Conditional Zoning Certificate_**."  (emphasis added).

34.     Damascus had already obtained a "Conditional Zoning Certificate" (otherwise known as the Conditional Use Permit) in 2015 for the operation of its year-round retreat.  *See* Zoning Resolution § 6.01.  Accordingly, Damascus had not violated Section 14.01 by installing Cottages to aid in carrying out the very purpose for which the Conditional Use Permit was granted.

35.     The Cease and Desist Letter further stated, "You are hereby ordered to cease and desist construction activity until a new Conditional Use Certificate is granted by the BZA."

36.     However, by the time the Township sent the Cease and Desist Letter, Damascus had already installed the Cottages.  Therefore, no "construction" took place after the Damascus received the Cease and Desist Letter. In short, the Cease and Desist Letter was moot upon arrival.

**E.      Thereafter, the Fire Chief Instructs the District Fire Inspector to Refuse to Inspect or Permit the Cottages.**

37.     On May 23, 2023, an inspector from the Central Ohio Joint Fire District ("COJFD") was on the Property for a scheduled test of a hydrant system.

38.     Damascus requested that the inspector come back on Thursday, May 25, 2023, for a 15-minute, perfunctory inspection the Cottages.  The inspector replied "I'll have to talk to the Chief," referring to Fire Chief McCann.

39.     Later that day, the inspector spoke to Damascus and indicated that the COJFD would not offer the inspection due to the Township's erroneous Cease and Desist Letter.

40.     In other words, Fire Chief McCann declined to perform a required public service – the basic inspection – due to the Township's violations of Damascus' rights.  Upon information

and belief, Defendants were refusing to allow the inspection in an effort to block Damascus from

obtaining a Certificate of Occupancy from the Ohio Department of Commerce.

> **F.  Damascus and Its Campers Face Irreparable Harm Caused by Defendants'**
> **Actions.**

41.  Damascus' 2023 summer-retreat season began in June. As a result, Damascus was

required to have the premises ready prior to the arrival of its first campers on June 11, 2023.

42.  The Cottages were planned for occupancy by campers that had paid and reserved

spots in these buildings.  The Cottages were set to host approximately 63 campers per week and

567 campers for the summer.

43.  Without the ability to occupy the Cottages, the campers would not have been able

to attend camp.  If forced to turn away campers, Damascus would incur substantial monetary

damages and reputational harm. Most importantly, Damascus and these campers would lose the

opportunity to practice their Catholic faith together this summer.

44.  Knowing this, Defendants refused to permit or inspect the Cottages. Damascus was

therefore forced to file this litigation and obtain the necessary inspections through other means.

> **G.  Damascus Files This Litigation to Protect Its Religious Liberties and the**
> **Township Files a State Court Action to Shut Down Damascus' Operations.**

45.  After lawfully complying with the Township's zoning process to no avail,

Damascus continued to face animus and insurmountable hurdles not otherwise encountered by

other property owners. Left with no other option, Damascus filed this action.

46.  The Township doubled down on its already unlawful actions and, on behalf of

Clippinger, filed a Complaint for Permanent Injunctive Relief in the Knox County Court of

Common Pleas, Case No. 12IN05-0149.  In the state court action, Clippinger is seeking to

invalidate Damascus' conditional use permit, which would stop all religious activity on the

Property. Damascus filed an unopposed motion to stay the state court lawsuit during the pendency of this litigation.

47.     On the eve of the summer-retreat season – and without the help, assistance, or cooperation of Defendants – Damascus obtained the necessary inspections to allow the campers to occupy the Cottages. Despite Defendants' obstructionist tactics, Damascus and its campers were able to engage in their protected religious activities during the 2023 season.

48.     However, Defendants continue to erroneously claim that the Cottages are not permitted on the Property.

### H.     The Township Enacts a *De Facto* Moratorium on the Property to Unlawfully Maintain the "Status Quo" in Retaliation against Damascus.

49.     Damascus is now seeking to build an indoor worship facility ("Indoor Facility"), offering a unique and accessible space for various worship activities that protects attendees from the risk of adverse weather and mitigates noise to surrounding properties.

50.     On June 2, 2022, in response to such concerns, Damascus advised the Township:

Our programming team has committed to implementing programming changes that will enable quieter outdoor programming overall.  Longer-term, we have begun an initiative that would enable us to eliminate our tent-programming through the construction of an indoor meeting facility.   Due to the cost and process of construction, we are hoping to accomplish this project in the next 2-3 years. Again, we are truly doing our best to be a positive contributor to the local community while also faithfully accomplishing what we believe to be a critical mission of youth empowerment, education, and faith formation.  Thanks for your commitment to partnering with us in this process.

51.     After working diligently for over one year to raise the necessary funds through charitable donations, Damascus secured the funds necessary to design and construct the Indoor Facility.

52.     The Indoor Facility – a state-of-the-art 9,000 square foot facility – complies with all applicable laws and zoning regulations.

53.     On October 12, 2023, Damascus contacted Clippinger and requested a new permit for the Indoor Facility (the "Second Application") (together, the First Application and the Second Application are the "Applications").   Pursuant to the Township's general practice, Damascus attached the building plans along with its Second Application.

54.     Because all 471 acres of the Property were approved for Damascus' religious operations in 2015, Damascus had a legitimate expectation that the Second Application would be approved as a matter of course.

55.     On November 5, 2023, Clippinger responded. Clippinger stated, "On the advice of counsel, the [T]ownhsip is maintaining the status quo with Damascus on all zoning matters until pending litigation is resolved. After that is concluded, [the Township] will consider [Damascus'] request."   A true and accurate copy of the November 5, 2023 correspondence is attached hereto as **Exhibit C**.

56.     Neither the Township nor its counsel provided any further explanation for the Township's refusal to even consider Damascus' Second Application.

57.     Because Damascus filed this lawsuit to protect its religious liberties, the Township has enacted a *de facto* moratorium on Damascus' Property to maintain the "status quo."

58.     By refusing to consider the Second Application, in effect, the Township denied the Second Application.

59.     The planning and construction of the Indoor Facility has been arbitrarily, unreasonably, and unlawfully put to a halt for an indeterminate amount of time.

**I.     Damascus and Its Campers Again Face Irreparable Harm Due to Defendants' Actions.**

60.     Now, Defendants refuse to process Damascus' Second Application in response to Damascus challenging the Defendants' unlawful actions in regard to the First Application.

61.     Defendants' refusal to process Damascus'  Second Application will result in campers, worshipers, and other attendees from having the opportunity to practice their Catholic faith together, safely under one roof.

62.     Defendants' actions, or lack thereof, represent yet another obstacle that has been purposefully placed in the path of Damascus from utilizing its Property to practice its Catholic faith.

63.     If Defendants continue to prevent Damascus from using the Property pursuant to the Conditional Use Permit, Damascus and its campers could be prohibited from engaging in protected religious activities and suffer irreparable harm.

## <u>COUNT ONE</u>

**(Violation of The Religious Land Use and Institutionalized Persons Act's ("RLUIPA") "Substantial Burden" Provision, 42 U.S.C. § 2000cc(a), Against All Defendants)**

64.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

65.     On March 16, 2015, the Township granted Damascus the Conditional Use Permit without conditions to operate its year-round Catholic camp and retreat center on the Property.

66.     Damascus' intended use of the Property as "a year-round Catholic retreat and conference center with a community of full-time missionaries providing an environment of encounter for thousands of people of all ages," constitutes "religious exercise," as that phrase is used in 42 U.S.C. § 2000cc(a)(1).

67.     Defendants, through their actions described above, have prevented Damascus from using the Property in furtherance of its religious mission and exercise, which has substantially burdened Damascus' religious exercise in violation of 42 U.S.C. § 2000cc(a)(1).

68.     Defendants have, therefore, violated 42 U.S.C. § 2000cc(a)(1), causing Damascus to suffer both irreparable harm and monetary damages.

## COUNT TWO

**(Violation of RLUIPA'S "Equal Terms" Provision, 42 U.S.C. § 2000cc(b)(1),
Against the Township, the Board, and the Zoning Inspector)**

69.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

70.     Within the RC District, "Churches and Other Places for Religious Worship" – *i.e.* religious assemblies and institutions – are required to apply for and to obtain conditional use permits before they are permitted to locate and operate within the district.

71.     In contrast, nonreligious assemblies and institutions, including "Agriculture," "One family detached dwelling units," "Fish and game hatcheries," and "Minor subdivisions involving two (2) or more one family dwelling units," are deemed "Permitted Uses" and are allowed to locate and operate within the RC District as of right.

72.     The Zoning Resolution, both on its face and as applied by the Township, the Board, and the Zoning Inspector, treats Damascus, a religious assembly and institution, on less than equal terms with the nonreligious assemblies and/or institutions within the RC District.

73.     Defendants have, therefore, violated 42 U.S.C. § 2000cc(b)(1), causing Damascus to suffer both irreparable harm and monetary damages.

## COUNT THREE

**(42 U.S.C. § 1983 Deprivation of Damascus' Property and Liberty Interests without
Substantive Due Process of Law in Violation of the Fourteenth Amendment to the United
States Constitution Against All Defendants)**

74.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

75.     Defendants have deprived Damascus of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

76.     Damascus' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

77.     Damascus has constitutionally protected property and liberty interests in relation to the Property, including, but not limited to:

    a.   The right to use the Property consistent with the Conditional Use Permit;

    b.   The right to use the Property in furtherance of its religious mission and exercise; and

    c.   The right to be free from arbitrary and capricious zoning decisions relating to the Property.

78.     The Township's denial of the Applications is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

79.     The Township's issuance of the Cease and Desist Letter is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

80.     The Fire Chief's refusal to permit inspection of the Cottages is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

81.     The Township's refusal to consider Damascus' Second Application for the Indoor Facility is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

82.     Accordingly, Damascus has suffered, and will continue to suffer, the deprivation of its vested rights under the United States Constitution.

## COUNT FOUR

### (42 U.S.C. § 1983 First Amendment Retaliation)

83.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

84.     Damascus has been engaging in activity protected by the First Amendment of the United States Constitution by exercising its right to vindicate its religious liberties by filing the Original Complaint in this action.

85.     Damascus exercised its rights by submitting the Applications.

86.     Damascus' exercise of its First Amendment rights angered Township officials.

87.     The Township, in retaliation for Damascus' exercise of its First Amendment rights, has implemented a *de facto* moratorium on the Property and is refusing to even consider an otherwise lawful request for Damascus to develop the Property for the purpose of grinding down and gradually destroying Damascus' will to exercise its First Amendment Rights.

88.     The Township's retaliatory actions against Damascus would chill or deter an ordinary person from exercising one's First Amendment right to practice their faith, to submit zoning applications to facilitate the practice of their faith, and to file a lawsuit protecting one's religious liberties.

89.     Damascus' First Amendment activity was a motivating factor for the Township's retaliatory actions, as indicated by the Township's unequal, inequitable, arbitrary, and unreasonable treatment of Damascus.

90.     The Township's act violates Damascus' First and Fourteenth Amendment rights under the United States Constitution.

91.     As a result, Damascus has suffered, and will continue to suffer, the deprivation of its vested rights under the United States Constitution.

## **COUNT FIVE**

### **(42 U.S.C. § 1983 Violation of Procedural Due Process)**

92.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

93.     The Township has deprived Damascus of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

94.     Damascus' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

95.     Damascus possesses legitimate claims of entitlement and justifiable expectations in its property interests, for among other reasons:

a.  The right to use the Property consistent with the Conditional Use Permit;

b.  The right to use the Property in furtherance of its religious mission and exercise; and

c.  The right to be free from arbitrary and capricious zoning decisions relating to the Property.

96.     The Township enacted a *de facto* moratorium over the development of the Property and denied the Applications without providing Damascus with any notice or opportunity to be heard.

97.     The Township denied Damascus due process by refusing Damascus the opportunity to engage in the Township's land use application process afforded to other landowners in the Township.

98.     The Township's actions and omissions have prevented Damascus from putting the Property to its full economic use and from otherwise engaging in lawful activity on the Property.

99.     The Township deprived Damascus of its property and liberty interests by denying Damascus the opportunity to have the Applications reviewed or evaluate by an unbiased arbitrator.

100.    As a result, Damascus has suffered and will continue to suffer the deprivation of its vested rights under the United States Constitution.

## COUNT SIX

### (42 U.S.C. § 1983 Violation of Equal Protection)

101.    Discovery incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

102.    The Township subjected Damascus to unequal treatment of the law under color of law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

103.    Previously, the Township has accepted, reviewed, and either approved or denied similar applications for permits under the Township's land use application process.

104.    Indeed, the Township has established a specific process for land use applications for all other similarly situated property owners.

105.    Damascus attempted to utilize that very process and was arbitrarily denied the ability to do so under the guise of maintaining the "status quo."

106.     The Township treated Damascus differently than other similarly situated applicants, including, but not limited to, the following ways:

      a.     The Township arbitrarily and unreasonably subjected Damascus to an application process, or lack thereof, different from other similarly situated property owners who filed land use applications in the Township;

      b.     The Township arbitrarily and unreasonably denied to process the Applications;

      c.     The Township arbitrarily and unreasonably singled out Damascus' Second Application because there is pending litigation brought by Damascus against the Township;

      d.     The Township has imposed a *de facto* moratorium against the Property without subjecting any other property or landowner in the Township to that moratorium.

107.     The township acted with animus towards Damascus and its request and has no rational basis for the discriminatory treatment of Damascus.

108.     As a result, Damascus has suffered and will continue to suffer from the Township's unequal treatment under the law.

## COUNT SEVEN

### (Declaratory Judgment)

109.     Damascus incorporates by reference the allegations set forth in the foregoing Paragraphs of this Amended Complaint as if fully set forth herein.

110.     Damascus is entitled to a declaratory judgment that Damascus is free to operate its religious camp and retreat as a permitted use of the Property.

111.     Damascus is entitled to a declaratory judgment that the Conditional Use Permit allows Damascus to operate year-round religious programming on the Property.

112.    Damascus is entitled to a declaratory judgment that the Township's arbitrary refusal to accept or review any land use proposals for the Property is unconstitutional and unreasonable.

113.    Damascus is entitled to a declaratory judgment that Damascus' intended use of the Property, including but not limited to Damascus' use of the Cottages and the Indoor Facility, are consistent with and permitted by the Conditional Use Permit.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in consideration of the foregoing, Damascus seeks:

A.    Compensatory damages;

B.    A preliminary and permanent injunction to enjoin Defendants from taking any action that prohibits Damascus from using its Property pursuant to the Conditional Use Permit;

C.    A declaratory judgment that Damascus is free to operate its religious camp and retreat as a permitted use of the Property;

D.    A declaratory judgment that the Conditional Use Permit allows Damascus to operate year-round religious programming on the Property;

E.    A declaratory judgment that the Township's arbitrary refusal to accept or review any land use proposals for the Property is unconstitutional and unreasonable.

F.    A declaratory judgment that Damascus' intended use of the Property, including but not limited to Damascus' use of the Cottages and the Indoor Facility, are consistent with and permitted by the Conditional Use Permit.

G.    Pre- and post- judgment interest;

H.    Attorneys' fees and costs;

I.      Any other declarative, injunctive, or other equitable relief this Court deems just and

appropriate.

Respectfully submitted,

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463), Trial Attorney
Elizabeth S. Alexander (0096401)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
P/F:  (614) 464-6233
jrmiller@vorys.com
esalexander@vorys.com

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Joseph R. Miller* .
Joseph R. Miller (0068463), Trial Attorney
Elizabeth S. Alexander (0096401)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
P/F:  (614) 464-6233
jrmiller@vorys.com
esalexander@vorys.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon all

counsel of record via the court's electronic filing system on this 29th day of February, 2024.


*/s/ Elizabeth S. Alexander*
Elizabeth S. Alexander (0096401)